[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11521
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cv-00148-PGB-DCI

JENNIFER WILLIAMS MORSCH,

Plaintiff - Appellant,

versus

JP MORGAN CHASE BANK N.A.,
a subsidiary of JP Morgan Chase & Company
f.k.a. Washington Mutual Bank,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 5, 2020)

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

In April 2003, Jennifer Morsch leased a safe deposit box from Washington Mutual Bank at its Bay Hill Branch in Dr. Phillips, Florida. In the years that followed, Morsch accumulated valuables there, including cash, jewelry, and a collection of gold coins. But when she tried to access her box in August 2016, much to her surprise and dismay, she found that her key no longer worked. And Chase Bank, which had since taken over the branch, refused to drill the lock on the box. According to Chase, Morsch was mistaken that the box was hers: Her box was number 40064, not, as she believed, 90064, which had been leased to another customer in 2012. When Chase opened box 40064, however, it was empty.

It turns out that Morsch was right, and Chase wrong. Box 90064 had been hers. But Morsch didn't find that out until it was too late. In December 2017, she sued Chase for damages for her lost items. After a jury trial in April 2019, the district court granted judgment as a matter of law to Chase on all counts. Morsch did not appeal. But four months later, serendipity struck. While watching late-night local news, a friend of Morsch's learned that Florida's Division of Unclaimed Property was holding an auction, and among its featured items was a unique, four-carat diamond necklace—a necklace that she recognized to be Morsch's. She called Morsch. And after Morsch explained her situation to the Division the next morning, she recovered every item that she had stored in her safe

2

box at Chase, down to the last gold coin.  Morsch's subsequent Freedom of Information Act (FOIA) request to the State revealed that Chase had escheated her safe box contents on September 11, 2012.

But not all's well that ends well: Morsch still had a final judgment against her.  Seeking relief from the court's April 2019 judgment, she filed two Rule 60 motions sequentially.  This appeal involves her Rule 60(d)(3) motion, which seeks relief on the ground that Chase committed fraud on the court.  The district court denied her motion, reasoning that the chain of inferences underlying Morsch's fraud claim—that Chase's documents turned out to be incorrect, so it must have known they were incorrect, and so must have fabricated them—was "too tenuous." We now review the district court's ruling for abuse of discretion.  *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014).

Rule 60(d)(3) permits courts to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).  Fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985).  We have said that "only the most egregious misconduct," such as "fabrication of evidence by a party in which an attorney is implicated," constitutes a fraud on the court. *Rozier v. Ford Motor Co.*, 573 F.2d

3

1332, 1338 (5th Cir. 1978). The moving party must show fraud by clear and convincing evidence. *Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987). "Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud." *Id.* at 283–84 (alterations adopted).

Morsch fails to show fraud on the court by clear and convincing evidence, and the district court did not abuse its discretion in so holding. In particular, though Chase's statements to the district court ultimately turned out to be false, Morsch has shown neither that Chase intentionally fabricated evidence nor that one of its attorneys was implicated in such a fraud.

To show Chase's knowing fabrication of evidence, Morsch argues that we should impute the knowledge of Chase's employees to Chase. She says that newly discovered evidence—the FOIA document received from the State—shows that in September 2012, three Chase employees drilled the lock on Morsch's box and removed her property to Chase's escheatment vault in Texas. Because these employees knew the contents of the box and that the box was emptied, so too, by imputation, did Chase. Thus, Chase knew that its statements to the district court— for instance, that it did not know what had happened to Morsch's property—were false.

4

Setting aside whether knowledge-by-imputation is a valid theory for showing fraud on the court, there is a fatal flaw in Morsch's argument: The fact that the employees emptied Box 90064 does not show that they knew that the box was Morsch's. Thus, on its own terms, Morsch's argument does not show that Chase knew its statements to the court were false. To plug the gap, Morsch suggests that the employees must have known the box was Morsch's when it emptied the box in *September 2012* because Morsch had accessed the box in the fall of *2009*. That tenuous inference does not come close to showing Chase's knowledge by clear and convincing evidence.

Separately, even if we were to accept that Chase knew (by imputation) that its statements to the court were false, Morsch has not even attempted to show that any of Chase's attorneys were involved in the fraud. *See Rozier*, 573 F.2d at 1338 ("[O]nly the most egregious misconduct, such as . . . fabrication of evidence by a party *in which an attorney is implicated*, will constitute a fraud on the court." (emphasis added)).

Finally, there is the standard of review: Even if we believed that the issue of fraud were close on a *de novo* review, we cannot say that the district court abused

5

its discretion in denying Morsch's motion.  At bottom, we agree with the district

court that Morsch's chain of inferences is "simply too tenuous."[1]

Thus, we **AFFIRM**.

---

[1] Two brief remarks on the parties' arguments related to waiver.  First, Chase argues that Morsch has waived any argument for her Rule 60(d)(3) motion by failing to discuss the relevant legal standard and failing to cite cases interpreting it in her initial brief.  We disagree.  Though Morsch's precise arguments can be difficult to discern, she has sufficiently teed up a claim of fraud on the court by highlighting several statements Chase made at trial that she argues constituted "fabricated evidence" and "obstruct[ed] the discovery process."  Second, Morsch argues for the first time in her reply brief that the doctrine of equitable estoppel prevents Chase from responding to her Rule 60(d) motion.  Morsch waived this argument by failing to raise it in her initial brief.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[W]e do not address arguments raised for the first time [even] in a *pro se* litigant's reply brief.").